Not for Publication

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| NIA BARNETT,<br>*(JANE DOEs 1-4, et al.)*<br><br>*Plaintiff,*<br><br>v.<br><br>RUTGERS UNIVERSITY,<br>*formerly known as*<br>UNIVERISTY OF MEDICINE AND DENTISTRY OF NEW JERSEY (UMDNJ)<br><br>*Defendant.* | Civil Action No. 17-2503<br><br>**OPINION & ORDER** |

**John Michael Vazquez, U.S.D.J.**

This case arises from Plaintiff's alleged experiences of harassment, discrimination, and disparate treatment while working for Rutgers University as well as while applying to Rutgers University Medical School and a Rutgers University PhD program. Plaintiff brings this action on behalf of herself and several "Jane Doe" plaintiffs. At the time of the alleged improprieties, Plaintiff worked for the University of Medicine and Dentistry of New Jersey ("UMDNJ"). In 2013, UMDNJ merged into Rutgers, with the exception of the osteopathic medicine school. N.J.S.A. 18A:64M-1 *et seq.*

The present matter comes before the Court on Defendant Rutgers University's ("Defendant") motion to dismiss Plaintiff Nia Barnett's ("Plaintiff") Complaint pursuant to Federal Rule of Civil Procedure 12(c), which addresses a judgment on the pleadings. D.E. 8.

Plaintiff submitted a brief in opposition, D.E. 10, to which Defendant replied. D.E. 11.[1] The Court reviewed the submissions in support and in opposition, and considered the motion without oral argument pursuant to Fed. R. Civ. P. 78(b) and L. Civ. R. 78.1(b). For the reasons stated below, Defendant's motion is **GRANTED**.

### I. BACKGROUND

#### A. Factual Background

Plaintiff, an African American female, is a New Jersey resident and a former employee of UMDNJ. Complaint ("Compl.") ¶¶ 1, 6. Plaintiff, from about March 2004 until April 2010, worked for the Children's Mobile Response and Stabilization Services ("CRMSS"), a program offered through UMDNJ's Behavioral Health Care division. *Id.* at ¶¶ 5, 8(a).

The timeline of events alleged in the Complaint is somewhat unclear. However, it is clear that Plaintiff believes her supervisor at CRMSS, Maria Sartori ("Sartori"), repeatedly engaged in discriminatory acts, including "microaggressive behavior," towards Plaintiff and other African American and Latina women in CMRSS. *Id.* ¶ 8(e). Specifically, Sartori, a Caucasian woman, kept an African-American Cabbage Patch doll in her office, which she spoke to in "baby talk" and cuddled, stroked, and petted while meeting with Plaintiff and during group supervision sessions. *Id.* Plaintiff alleges that even though Sartori claimed to use the doll for counseling purposes, CMRSS counseling was done at patients' homes and the doll never left Sartori's office.[2] *Id.* Plaintiff expressed her discomfort with Sartori's behavior towards the doll to Sartori,

---

[1] In this Opinion, Defendant's motion to dismiss (D.E. 8) will be referred to as "Def. Brf." Plaintiff's brief in opposition (D.E. 10) will be referred to as "Pl. Opp." Defendant's reply brief (D.E. 11) will be referred to as "Def. Rep."

[2] Plaintiff alleges that in addition to the African American Cabbage Patch doll, Sartori kept a number of stuffed animals in her office. Compl. ¶ 8(e). Sartori told Plaintiff that she used these other stuffed animals for counseling purposes as well. *Id.*

but Sartori never acknowledged Plaintiff's concerns. *Id.* Sometime later, an union representative, Carmelo Colon, told Sartori that her behavior towards the doll made African American women in CMRSS uncomfortable. *Id.* Sartori then removed the doll from her office. *Id.*

In addition to her behavior towards the doll, Plaintiff claims Sartori regularly threatened daily to terminate people working in CMRSS. *Id.* ¶ 8(f). To this point, on October 17, 2008,[3] Sartori asked Plaintiff to have a meeting with her. *Id.* ¶ 17. During this meeting Satori asked Plaintiff about her (Plaintiff's) personal health and allegedly threatened to terminate Plaintiff because she is a dialysis patient. *Id.* Plaintiff said this caused her to experience anxiety and other stress disorders. *Id.* She reported the incident to Christopher Kossef (President of University Behavioral Healthcare), Michelle Miller, Darnell Reamer, and Colon. *Id.* ¶¶ 15, 18.[4]

Further, beyond her experiences working in CMRSS, Plaintiff alleges Defendant discriminated against her by repeatedly denying her entry into Rutgers Medical School ("MD") and by denying her entry in a Rutgers PhD program. *Id.* ¶ 8(j-k). Plaintiff states that she was, and is, qualified for each program. As to the MD program, Plaintiff claims that was "academically qualified and according to Associate Dean, Dr. George Heinrich, ma[de] a compelling candidate for the program." *Id.* ¶ 8(j). As to the PhD program, Plaintiff states that she successfully completed coursework (four graduate level courses) during one semester with a G.P.A. of 3.25. *Id.* ¶ 8(k).

---

[3] It is unclear to the Court whether the disagreement over the doll occurred before or after this date.

[4] Plaintiff states that Defendant rehired Sartori, while not rehiring Plaintiff and Jane Does, despite Chris Kosseff sending an email that apparently suggested a new supervisor could resolve past problems in CMRSS. Compl. ¶ 8(h). When this re-hiring took place is unclear. It is also not clear whether Defendant terminated Plaintiff from CMRSS or Plaintiff resigned.

3

As noted, the timeline of events is not clear from the Complaint, but it lists numerous dates highlighting instances when Plaintiff objected to the harassment and discrimination she was experiencing. These include: (a) reporting complaints to the Ethics Hotline on October 22, 2008; October 24, 2008; October 28, 2008; November 4, 2008; December 8, 2008; April 7, 2009; April 9, 2009; May 22, 2009; and May 26, 2009; (b) writing a letter on October 30, 2008 to, and then meeting with, Christopher Kosseff; (c) meeting with Michelle Miller on November 3, 2008; (d) writing a letter on February 13, 2009 to, and then meeting with, Joanne Cheung (Office of Ethics Compliance); (e) meeting with Darnell Reamer (Human Resources)[5] in May 2008 and then writing a letter to him on July 14, 2009; (f) filing complaints (charges of discrimination) with the EEOC on October 27, 2009; April 15, 2014; and September 26, 2016; and (g) filing grievances with Carmelo Colon, the union representative, on April 9, 2009; April 16, 2009; April 21, 2009; and March 11, 2010. *Id.* ¶ 9(a-g). The Complaint also clearly alleges that Plaintiff left her employment in April 2010. *Id.* ¶ 5. Plaintiff also received a right to sue letter from the United States Equal Employment Opportunity Commission ("EEOC") after filing charges of discrimination pursuant to Title VII of the Civil Rights Act and the Americans with Disabilities Act ("ADA") with the EEOC on September 26, 2016. Def. Brf. Ex. C; D.E. 8-1.

### A. Procedural History

On December 2, 2016, Plaintiff filed a Complaint against Defendant in New Jersey Superior Court. D.E.1-1. The Complaint asserts four counts: Count One - New Jersey Law Against Discrimination ("NJLAD") violation based on race; Count Two - ADA violation; Count three - NJLAD violation based on retaliation; and Count Four - Title VII and NJLAD violations

---

[5] During the May 2008 meeting Reamer allegedly told Plaintiff "If you are uncomfortable then quit." Compl. ¶ 9(e).

4

based on hostile work environment. Additionally, within Counts One and Two are failure to admit, concerning the MD and PhD programs, claims against Defendant.

Plaintiff served Defendant with the Summons and Complaint on March 13, 2017. D.E. 1-2. On April 12, 2017, Defendant removed the matter to federal court. D.E. 1. Defendant then filed an Answer to the Complaint on April 19, 2017. D.E. 2. Subsequently, on July 5, 2017, Defendant filed the pending motion pursuant to Federal Rule of Civil Procedure 12(c). D.E. 8. Plaintiff filed a brief in opposition, D.E. 10, to which, Defendant replied. D.E. 11.

## II. **LEGAL STANDARD**

Rule 12(c) of the Federal Rules of Civil Procedure provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." "The pleadings are 'closed' after the complaint and answer are filed, along with any reply to additional claims asserted in the answer. *Horizon Healthcare Servs., Inc. v. Allied Nat. Inc.*, 2007 WL 1101435, at *3 (D.N.J. Apr. 10, 2007). "Under Rule 12(c), judgment will not be granted unless the movant clearly establishes that no material issue of fact remains to be resolved and that he is entitled to judgment as a matter of law." *Bayer Chems. Corp. v. Albermarle Corp.*, 171 Fed. Appx. 392, 397 (3d Cir. 2006) (internal citations and quotations omitted) (quoting *Jablonski v. Pan Am. World Airways, Inc.*, 863 F.2d 289, 290 (3d Cir. 1988)).

The difference between a motion to dismiss pursuant to Rule 12(b)(6) and a motion for judgment on the pleadings pursuant to Rule 12(c) is purely procedural in that a 12(b)(6) motion must be brought before any responsive pleadings are filed, whereas a Rule 12(c) motion may be filed after the pleadings are closed. *See Turbe v. Government of Virgin Islands*, 938 F.2d 427, 428 (3d Cir. 1991); *Lapella v. City of Atl. City*, 2012 U.S. Dist. LEXIS 100327, at *6 (D.N.J. July 18,

2012). Accordingly, a 12(c) motion is governed by the same standard that applies to a motion to dismiss under Rule 12(b)(6). *Revell v. Port Auth. of N.Y. & N.J.*, 598 F.3d 128, 134 (3d Cir. 2010).

To withstand a motion under Rule 12(b)(6) or 12(c), a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A complaint is plausible on its face when there is enough factual content "that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In evaluating the sufficiency of a complaint, a court must "accept all factual allegations as true" and draw all reasonable inferences in favor of the plaintiff. *Phillips v. City of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008). A court, however, is "not compelled to accept unwarranted inferences, unsupported conclusions[,] or legal conclusions disguised as factual allegations." *Baraka v. McGreevey*, 481 F.3d 187, 211 (3d Cir. 2007) (citation omitted). Further, a court "generally cannot consider matters extraneous to the pleadings," but may consider "documents that are integral to or explicitly relied upon in the complaint. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997). If, after construing the complaint in the light most favorable to the plaintiff, it appears that no relief could be granted under any set of facts consistent with the allegations, a court may dismiss the complaint for failure to state a claim. *DeFazio v. Leading Edge Recovery Sols.*, 2010 U.S. Dist. LEXIS 131357, at *4 (D.N.J. Dec. 13, 2010).

In addition, because Plaintiff is proceeding *pro se*, the Court construes the pleadings liberally and holds them to a less stringent standard than those filed by attorneys. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). "The Court need not, however, credit a *pro se* plaintiff's 'bald assertions' or 'legal conclusions.'" *D'Agostino v. CECOM RDEC*, No. 10-4558, 2010 WL

3719623, at *1 (D.N.J. Sept. 14, 2010) (quoting *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997)).

### III. LAW & ANALYSIS

Defendant argues that Plaintiff's Complaint should be dismissed on several grounds under Rule 12(c). First, Defendant argues that Plaintiff's employment based claims are barred by the applicable statutes of limitation. Def. Brf. at 4–7. In the alternative, Defendant also argues that the Plaintiff's claims are barred by the doctrine of laches. *Id.* at 8. Second, Defendant argues that Plaintiff's claims on behalf of Jane Does, "African American/Hispanic employees of the CMRSS department of the former UMDNJ," should be dismissed for lack of standing and failure to state a claim. *Id.* at 2. Third, Defendant adds that Plaintiff's allegations concerning Rutgers' failure to admit her to the University's MD and PHD programs should be dismissed for failure to state a claim. *Id.* at 9–10.

#### A. Employment Discrimination Claims

##### 1. The New Jersey Law Against Discrimination

Defendant argues that employment-based part of the claims in Counts One, Three, and Four of Plaintiff's Complaint should be dismissed as time-barred under the NJLAD's two-year statute of limitations. *Id.* at 4–6. In support, Defendant states that the relevant violations occurred "no later than" April 2010 when Plaintiff left her position at UMDNJ. *Id.* at 6. Therefore, Defendant concludes, the NJLAD statute of limitations expired in April 2012. *Id.* Because Plaintiff filed her Complaint in 2016, more than six years after her last day of employment, Defendant argues that the claims are necessarily time-barred. Plaintiff responds that her claims "fall[] within the acceptable statute of limitations" because "the discrimination and retaliation against . . . Plaintiff is current and ongoing." Pl. Opp. at 1. Plaintiff claims that she "has

7

consistently sought relief in this matter since the very first incidence of discrimination occurred while she was employed with UMDNJ/Rutgers in 2008." *Id.*

The Federal Rules of Civil Procedure technically "require a defendant to plead an affirmative defense, like a statute of limitations defense, in the answer, not in a motion to dismiss." *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014). If, however, a statute of limitations bar is apparent on the face of the Complaint, then a defendant may raise a statute of limitations defense in a motion to dismiss. *Id.*

Claims arising under the NJLAD are subject to a two-year statute of limitations. *Alexander v. Seton Hall Univ.*, 204 N.J. 219, 228 (2010) (citing *Montells v. Haynes*, 133 N.J. 282, 292 (1993)). "In employment discrimination actions, the limitations period begins with the time of the discriminatory act." *Hanani v. N.J. Dep't of Envtl. Prot.*, 205 F. App'x 71, 76 (3d Cir. 2006) (internal quotation and citation omitted); *Roa v. Roa*, 200 N.J. 555, 561 (2010) (holding that under the NJLAD "the limitations clock begins to run on a discrete retaliatory act, such as discharge, on the date on which the act takes place"). Thus, where a plaintiff alleges discrete acts of discrimination, "such as termination, failure to promote, denial of transfer, or refusal to hire," the statute of limitations begins running from the date of the last discriminatory event. *See National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002).

"'For causes of action arising under anti-discrimination laws, however, a judicially created doctrine known as the continuing violation theory has developed as an equitable exception to the statute of limitations.'" *Roa*, 200 N.J. at 566 (quoting *Bolinger v. Bell Atlantic,* 330 N.J. Super. 300, 306 (App. Div. 2000)). The continuing violation doctrine provides that "[w]hen an individual is subject to a continual, cumulative pattern of tortious conduct, the statute of limitations does not begin to run until the wrongful action ceases." *Wilson v. Wal-Mart Stores*, 158 N.J. 263, 272

(1999) (citation omitted). "The premise underlying the doctrine is that the conduct becomes actionable because of its continuous, cumulative, synergistic nature." *Roa*, 200 N.J. at 566 (internal quotations and citation omitted). When basing a continuing violation theory on a series of discriminatory events, a plaintiff must show "(1) at least one allegedly discriminatory act occurred within the filing period and (2) the discrimination is more than the occurrence of isolated or sporadic acts of intentional discrimination and is instead a continuing pattern of discrimination." *Bolinger*, 330 N.J. Super. at 307 (internal quotation marks omitted) (quoting *Harel v. Rutgers, State Univ.*, 5 F. Supp. 2d 246, 261 (D.N.J. 1998), *aff'd sub nom. Harel v. Rutgers*, 191 F.3d 444 (3d Cir. 1999)).

Here, Plaintiff's claims of racial discrimination, retaliation, and hostile working environment in the employment context under the NJLAD are barred by the two-year statute of limitations. Taking the facts in the light most favorable to Plaintiff, she could have experienced discrimination through April 2010, when she left CMRSS. However, even under the continuing violation doctrine, any claim arising from a discriminatory event occurring on the last day of April 2010 would still be time-barred. Because Plaintiff is proceeding *pro se*, the Court reviewed her opposition brief to determine whether Plaintiff meant to claim that she had actually worked with UMDNJ after April 2010. Plaintiff, however, does not contend in either her Complaint or her brief that she worked past April 2010. Thus, Plaintiff cannot show that a discriminatory act occurred within the statute of limitations. The statute of limitations for the LAD claims in this case started running, at the latest, in April 2010 when Plaintiff left her employment with UMDNJ. As a result,

the limitations period expired no later than April 2012. Plaintiff's claims under the NJLAD are dismissed with prejudice.[6]

### 2. Title VII of Civil Rights Act and the Americans with Disabilities Act

Defendant next argues that Plaintiff's claims of discrimination under Title VII of the Civil Rights Act and Title I of the ADA are barred by the applicable statues of limitations.[7] Defendant asserts that a plaintiff seeking to bring a claim under Title VII or Title I of the ADA must timely file with the EEOC pursuant to 42 U.S.C. Section 2000e-5. To that end, Defendant claims that Plaintiff did not timely file either claim with the EEOC. Defendant therefore concludes that the claims are time barred. Plaintiff again argues that her claims are not time-barred because "the discrimination and retaliation against . . . Plaintiff is current and ongoing." Pl. Opp. at 1. Plaintiff

---

[6] Because the Court is dismissing these claims as barred by the applicable statute of limitations, it will not reach Defendant's alternate argument regarding the doctrine of laches.

[7] Defendant assumes that Plaintiff alleges Count Two under Title I of the ADA, rather than Title II or III of the ADA. The Complaint does not specify what title of the ADA Plaintiff alleged Count Two under. Plaintiff, however, does not dispute Defendant's assumption that the Complaint meant to allege Count Two under Title I.

Nevertheless, even if the Complaint did mean to allege Count Two under Title II and III of the ADA, the claim would still be barred. The ADA does not include an express statute of limitations. *See* 42 U.S.C. § 12101. However "when a federal law provides the basis for the cause of action, but fails to supply a statute of limitation, [a court] must borrow an appropriate statute of limitations from the law of the forum state." *Weis-Buy Servs., Inc. v. Paglia*, 411 F.3d 415, 422 (3d Cir. 2005). With respect to claims arising under Title II or Title III of the ADA, "the most appropriate limitations period is the state's applicable personal injury statute of limitations." *Muha v. Rutgers, State Univ. of New Jersey*, No. 8-2142, 2009, U.S. Dist. LEXIS 18744, at *3 (D.N.J. Mar. 11, 2009). The statute of limitations for personal injury claims in New Jersey is two years, and the limitations period begins to run "when the plaintiff knows or has reason to know of the injury that is the basis of the action." N.J. Stat. Ann. 2A:14-2; *Burkhart v. Widener Univ., Inc.*, 70 F. App'x 52, 53 (3d Cir. 2003) (quoting *Toney v. U.S. Healthcare, Inc.*, 840 F. Supp. 357, 359 (E.D.Pa. 1993)). Thus, if the Court applied a two-year statute of limitation to Count Two, the ADA claim would have expired in April 2012.

repeats that she "has consistently sought relief in this matter since the very first incidence of discrimination occurred while she was employed with UMDNJ/Rutgers in 2008." *Id.*

A plaintiff alleging a violation of Title I of the ADA or Title VII of the Civil Rights Act must exhaust the administrative remedies available through the EEOC before bringing either claim in court. 42 U.S.C. § 2000e–5(e); *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) (applying Title VII procedural requirements to an ADA discrimination claim). Title VII and Title I of the ADA require that a plaintiff file a "charge" and receive a "right to sue" letter from the EEOC before filing suit in the district court. *Burgh v. Borough Council of Montrose*, 251 F.3d 465, 470 (3d Cir. 2001). A plaintiff must file the charge with EEOC "within 180 days of the alleged unlawful practice, or within 300 days if filed with a state agency." *Serrano v. Marcal Paper Mills, LLC*, No. CIV.A. 11-03501 SDW, 2012 WL 266424, at *2 (D.N.J. Jan. 30, 2012) (citations omitted). Further, after receiving a right to sue letter, a plaintiff has ninety days to file her complaint in district court. *Cardenas v. Massey*, 269 F.3d 251, 255 (3d Cir. 2001) (citing 42 U.S.C. § 2000e–5(f)(1)). If a plaintiff brings suit under Title VII or the ADA before receiving a "right to sue letter," the matter may be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to exhaust administrative remedies. *See, e.g., Robinson v. Univ. of Med. & Dentistry of N.J.*, No. 06-1158, 2006 WL 3371748, at *2 (D.N.J. Nov. 17, 2006) (granting the motion to dismiss ADA claims where plaintiff admitted that she did not file an EEOC charge or receive a right to sue letter).

Here, Plaintiff alleges that she filed charges of discrimination with the EEOC on three separate dates: October 27, 2009; April 15, 2014; September 26, 2016. First, assuming the Plaintiff did file a charge of discrimination with the EEOC on October 27, 2009, she would have needed to wait for the EEOC to issue her a right to sue letter before filing her complaint in court within ninety

days. Plaintiff does not allege that she had, nor did she include, a right to sue letter from this filing date. Second, any charge of discrimination that Plaintiff filed with the EEOC on April 15, 2014 would have been time barred. A filing date of April 2014 is four years after the last act of alleged discrimination, far past either 180 or 300 days, because the last date of alleged discrimination could not have been later than April 2010 when Plaintiff's employment ended. Further, Plaintiff does not allege that she had, nor did she include, a right to sue letter from this filing date. Third, and finally, the charges of discrimination that Plaintiff filed with the EEOC on September 26, 2016 are also time barred because they were filed over two years *after* the April 2014 date, which was already too late. While Plaintiff received a right to sue letter from the EEOC after making this filing and promptly filed it in New Jersey Superior Court on December 2, 2016, this does not cure the procedural default the resulted from her untimely filing with the EEOC in the first place. As a result, Plaintiff's Title VII and ADA claims are dismissed with prejudice.[8]

**B.     Claims on Behalf of the Janes Does**

Defendant next argues that Plaintiff's claims on behalf of the Jane Does, "African American/Hispanic employees of the CMRSS department of the former UMDNJ," should be dismissed for lack of standing and for failure to state a claim. Def. Brf. at 2. Plaintiff, in response, states that she "added the names of Janes Does, as a way to protect the identity of other potential parties as plaintiffs in the suit, so that their names are not part of the public record . . . ." Pl. Opp. at 1. Further, Plaintiff asserts that Defendants are aware of the Jane Does' identities because Plaintiff listed their names in her September 26, 2016 filing with the EEOC. *Id.* at 1-2. Plaintiff adds that with the Court's permission, she will contact these Jane Does to determine whether they

---

[8] Because the Court is dismissing these claims as barred by the applicable statute of limitations, it will not reach Defendant's alternative argument concerning the doctrine of laches.

would like to join her suit. *Id.* at 2. If the Jane Does do wish to join the suit, Plaintiff insists that she remain the "primary plaintiff." *Id.*

Plaintiff did not follow the proper procedure to allege claims on behalf of the Janes Does. First, Jane Doe designations (along with other fictitious party names) for *defendants* are "'routinely used as stand-ins for real parties until discovery permits the intended parties'" to be identified and made part of the action. *Genova v. Total Card, Inc.*, 193 F. Supp. 3d 360, 371 (D.N.J. 2016) (quoting *Hindes v. F.D.I.C.*, 137 F.3d 148, 155 (3d Cir. 1998)). Here the Jane Does are named as plaintiffs and, importantly, their identities are known to Plaintiff. In addition, a plaintiff may bring a class action "individually and on behalf of all other similarly situated," but here there does not appear to a sufficient number of Jane Does plaintiffs to fulfill the numerosity requirement of Federal Rule of Civil Procedure 23(a). Plaintiff indicates that the Jane Doe designations represent a handful of individuals. While the Third Circuit has never established a precise number of potential plaintiffs to qualify for class action treatment, the number of Jane Does submitted by Plaintiff would fall well short. Plaintiff is also *pro se*. She is not a licensed attorney. Thus, Plaintiff cannot represent other people in court. The Jane Does could bring their own claims either as *pro se* plaintiffs themselves or through legal representation. However, Plaintiff cannot act as their lawyer or voice in court. Further, Plaintiff does not even have the Jane Does' permission to file on their behalf.

While the Court recognizes that what happened to other African American or Latina women who worked within CMRSS at the same time as Plaintiff could provide relevant evidence of Plaintiff's claims, relevant evidence is quite different than bringing an action on another person's behalf. Finally, Plaintiff cannot use the discrimination that the Jane Does allegedly suffer(ed) from to revive the statute of limitations for her claims. *See Wetzel v. Liberty Mut. Ins.*

*Co.*, 508 F.2d 239, 246 (3d Cir. 1975) (holding that plaintiff could only bring a class action on behalf of employees whose claims were not time barred by the statute of limitations). The Jane Does are, therefore, dismissed as Plaintiffs from this lawsuit.

**C.     Failure to Admit**

Finally, Defendant argues that the Complaint does not plausibly plead Plaintiff's "failure to admit" claims under the LAD or ADA. Def. Brf. at 9. Defendant highlights that the Complaint does not identify the dates for Plaintiff's applications to or rejections from Rutgers MD or PhD programs. *Id.* Further, Defendant points out that documents attached to Plaintiff's opposition brief show that Plaintiff did not meet the programs' application requirements. Def. Rep. at 4-5.[9] Plaintiff counters that her Complaint is "very specific" because it "specifically names Associate Dean, Dr. George Heinrich" and alleges that the programs are part of Rutgers University. Pl. Opp. at 2-3.

The New Jersey Supreme Court has ruled that the United States Supreme Court's test in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) is the starting point for analyzing a claim under the NJLAD. *Bergen Commercial Bank v. Sisler*, 157 N.J. 188, 210 (1999). The *McDonell Douglas* test is a three-stage process: (1) the plaintiff must present sufficient evidence to establish a *prima facie* case of discrimination; (2) the defendant must then provide a legitimate non-discriminatory reason for its decision; and (3) the plaintiff must then have an opportunity to argue that defendant's stated reason was pretextual or discriminatory in its application. *Dixon v. Rutgers, The State Univ. of New Jersey*, 110 N.J. 432, 442 (1988).

---

[9] In their reply brief Defendant also raises the alternate argument that Plaintiffs' failure to admit claims are also barred by the applicable statute of limitations and the doctrine of laches. Def. Rep. at 5. The Court, however, will not consider new arguments raised for the first time in reply.

14

The first stage, where the plaintiff must make out a *prima facie* case of discrimination, "is met when the plaintiff shows that 'it is more likely than not' that the employer's actions were based on unlawful considerations." *Dixon*, 110 N.J. at 443 (quoting *Furnco Constr. Corp. v. Waters*, 438 U.S. 567, 577 (1978)). To do so, a plaintiff must allege the following: (1) plaintiff is a member of a protected class; (2) plaintiff was qualified for the rank or position sought; (3) plaintiff was denied promotion, reappointment, or tenure; and (4) others with similar or lesser qualifications achieved the rank or position. *Dixon*, 110 N.J. at 443 (citations omitted). Similarly, to establish a *prima face* case of discrimination under the ADA,[10] "the plaintiff must show: (1) he is a disabled person within the meaning of the ADA; (2) he is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and (3) he has suffered an otherwise adverse employment decision as a result of discrimination." *Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 306 (3d Cir. 1999) (internal quotation and citation omitted).

Here, the Complaint fails to sufficiently allege facts to state a plausible claim for relief under the LAD or the ADA. Turning first to the LAD, while Plaintiff sufficiently alleges that she is a member of a protected class based on race (African American), that fact alone does not raise an inference of discriminatory animus. The Complaint fails to provide factual allegations sufficient to meet the second prong of a *prima facie* case of discrimination under the LAD. It does not plausibly plead that Plaintiff was qualified for admission into Rutgers MD or PhD programs. Besides not providing relevant dates, the Complaint does not even plausibly allege that Plaintiff ever applied to and was rejected from these programs. Further, the Complaint does not plausibly

---

[10] Here, Plaintiff appears to bring her claim under Title II of the ADA, which provides "[s]ubject to the provisions of this subchapter, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

15

indicate the admission requirements for each program or how Plaintiff was in fact qualified. Therefore, Plaintiff has not established a *prima facie* case of discrimination under the LAD. The failure to admit claims under the LAD are dismissed without prejudice.

Turning next to Title II of the ADA, the Complaint fails to plausibly plead the first prong of a *prima facie* case of discrimination under the ADA. Plaintiff alleges that on October 17, 2008, Sartori threatened to terminate Plaintiff because Plaintiff was a dialysis patient. Plaintiff, however, does not provide plausible allegations that the admission officers even knew of her underlying condition and dialysis treatment. Further, the Complaint did not plausibly allege that Plaintiff is qualified for admission into Rutgers MD or PhD program for the same reasons discussed above. Thus, Plaintiff's failure to admit claims under the ADA are dismissed without prejudice.

The Court notes the following because Plaintiff is *pro se*, although the Court is not considering these facts at this stage. Several of the documents attached in the appendix to Plaintiff's opposition brief, if accurate, suggest that Plaintiff will not be able to make out the qualification prong under the LAD or ADA in any future filing. For example, an email chain dated May 3, 2011, shows that Plaintiff sought to transfer from Xavier University School of Medicine at Aruba to Rutgers Medical School. Pl. Opp., Ex. C at Page ID. 154-55; D.E. 10-1. However, an Associate Dean for Rutgers Medical School, George Heinrich, informed Plaintiff that Rutgers Medical School "has not considered transfer students for well over 10 years." *Id.* Thus, it appears that it was a long-standing practice of Rutgers not to accept any transfer students. Another email chain in July and August 2015 shows that Plaintiff refused to re-take the GRE, a requirement for the Rutgers PhD program. *Id.* at Page ID: 157-159. The document also suggests that Plaintiff never applied for the PhD program. Of course, the Court is not aware of whether Plaintiff has

additional information on which to base her claims. Nevertheless, the Court merely notes that the information submitted by Plaintiff does not appear to support her contentions.

**D.    Leave to Amend**

A court must grant a plaintiff leave to amend a complaint "absent evidence that amendment would be futile or inequitable." *Shane v. Fauver*, 213 F.3d 113, 116-17 (3d Cir. 2000). An amended complaint would be futile if it "would fail to state a claim upon which relief could be granted." *Id.* at 115. As to the failure to admit claims under the LAD and ADA, in light of the noted deficiencies, the Court has real concerns that any attempt to amend would be futile. However, because Plaintiff is proceeding *pro se*, and is entitled to a more relaxed standard of review than if she was represented by counsel, the Court will grant Plaintiff an opportunity to amend her pleadings and plausibly state her allegations. However, all other claims in the Complaint are barred by the applicable statute of limitations. As to those claims, the deficiencies in Plaintiff's Complaint cannot be cured through amended pleadings because the statute of limitations has run and, therefore, the Court finds that any future amendment would be futile.

Thus, for the reasons set forth above and for good cause shown,

IT IS on the 16th day of March, 2018,

**ORDERED** that Defendant's motion (D.E. 8) pursuant to Federal Rule of Civil Procedure 12(c) for judgment on the pleadings is **GRANTED**; and it is further

**ORDERED** that Plaintiff's claims of employment discrimination under the LAD and the ADA, retaliation under the LAD, and hostile work environment under Title VII and the LAD are **DISMISSED with prejudice**; and it is further

**ORDERED** that Plaintiff's failure to admit claims under the LAD and ADA are **DISMISSED without prejudice**;

17

**ORDERED** that if Plaintiff so chooses, she may file an Amended Complaint within thirty (30) days addressing the deficiencies noted above as to her failure to admit claims. If Plaintiff does not do so, her case will dismissed with prejudice, which means that she will be prohibited from bringing a future lawsuit against Defendant based on the allegations in her pleadings; and it is further

**ORDERED** that the Clerk of the Court shall serve this Opinion and Order upon Plaintiff by certified mail.

_____
JOHN MICHAEL VAZQUEZ, U.S.D.J.